## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| BRIAN COPPOLA, KIMBERLY COPPOLA, WILLIAM S. STEPHENS, MARTIN MAKOWSKI, and STEPHANIE MAKOWSKI, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | NO.  07-4023 |
| FERRELLGAS, INC. and RegO PRODUCTS CORP., | : : : | |
| Defendants. | : | |


### MEMORANDUM

BUCKWALTER S.J.                                                              March 6, 2008

      Currently pending before the Court is the Motion of Defendant Engineered Controls

International, Inc. ["ECII"][1] to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), the Response of

Plaintiffs Brian Coppola, Kimberly Coppola, William S. Stephens, Martin Makowski and

Stephanie Makowski, and Defendant ECII's Reply.  For the following reasons, the Court grants

the Motion and transfers the matter to the United States District Court for the District of New

Jersey, Trenton Division.

### I.      FACTUAL BACKGROUND

      According to the facts set forth in the Complaint and by the parties in their briefs, this

action arose from an accident at the Princeton University campus in Princeton, New Jersey.

(Compl. ¶ 10.)  Plaintiffs allege that, on the aforementioned date, Brian Coppola, William S.

---

[1]  Plaintiffs incorrectly identified Defendant ECII as "RegO Products Corp" in the
Complaint.

Stephens and Martin Makowski were using a gas cylinder while working at a partially completed construction site on the Princeton campus.  (Id.)  The gas cylinder began leaking propane, causing it to explode.  (Id.)  Personnel from the Princeton Borough Police Department, Princeton Fire Department, Princeton University Department of Public Safety and Princeton First Aid and Rescue Squad responded to the reports of the fire.  (Defs' Mem. Supp. Mot. Transfer Venue Ex. B.)  The three Plaintiffs at the scene were injured in the explosion and transferred to medical facilities in New Jersey.  (Id.)  In addition, three other workers were injured:  Tyree Jenkins of Nashville, Tennessee, Christopher Meletti of Lambertville, New Jersey and Tom Lebrosciano of Glenolden, Pennsylvania.  (Id.)  The fire was investigated by the Princeton Borough Police Department, the Princeton Department of Public Safety, the Princeton Township Fire Marshall and the Mercer County Prosecutor's Office.  (Id.)

On July 20, 2007, the injured Plaintiffs, together with spouses Kimberly Coppola and Stephanie Makowski – all of whom are residents of Pennsylvania – brought a products liability action against Defendants in the Court of Common Pleas of Philadelphia County.  They alleged that Defendant ECII, an Elon College, North Carolina corporation, manufactured a defective part on the gas cylinder.  (Compl. ¶ 8.)  Further, they claimed that Defendant Ferrellgas Inc., a corporation headquartered in Kansas and with an office in Philadelphia, Pennsylvania, leased the defective gas cylinder to Plaintiffs' employer, Dan LePore and Sons, which is based in Conshohocken, Pennsylvania.  (Id. ¶ 9.)  Plaintiffs asserted that Defendants knew or should have known that the gas cylinder was sold, distributed or delivered to the Plaintiffs in an unreasonably dangerous and defective condition.  (Id. ¶ 11.)  In addition, they contended that Defendants were negligent in failing to inspect and maintain the gas cylinder and failing to warn Plaintiffs about

2

its dangers.  (Id. ¶¶ 12-13.)

The case was removed to federal court on September 25, 2007, after which Defendants submitted an Answer and Affirmative Defenses.  On January 31, 2007, Defendant ECII filed a motion to transfer venue to the District of New Jersey, Trenton Division.  It is to this Motion that the Court now turns.

## II.    DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a); see also Connors v. UUU Prods., No 03-CV-6420, 2004 WL 834726, at *6 (E.D. Pa. Mar. 5, 2004).  The determination of whether to transfer venue pursuant to section 1404(a) is governed by federal law.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877-878 (3d Cir. 1995) (federal law applies because questions of venue are procedural, rather than substantive).

Analysis of a request for a section 1404(a) transfer has two components.  First, both the original venue and the requested venue must be proper.  Jumara, 55 F.3d at 878.  Venue, in a diversity case, is proper "(1) where the defendant resides, (2) where a substantial part of the events giving rise to the claim occurred, or (3) where personal jurisdiction may be had over any defendant if no other venue is proper."  Park Inn Intern., L.L.C. v. Mody Enters., Inc.  105 F. Supp. 2d 370, 375 (D.N.J. 2000) (summarizing 28 U.S.C. § 1391(a)).

Second, "[b]ecause the purpose of allowing § 1404(a) transfers is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense,'" Market Transition Facility of New Jersey v. Twena, 941 F. Supp.

462, 467 (D.N.J. 1996) (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964)), the Court is required to undertake a balancing test in deciding whether the "interests of justice [would] be better served by a transfer to a different forum."  <u>Jumara</u>, 55 F.3d at 879; <u>see also</u> <u>Salovaara v. Jackson Nat. Life Ins. Co.</u>, 246 F.3d 289, 298 (3d Cir. 2001).   The Third Circuit has outlined the pertinent public and private interest factors, as follows:

> The private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records.

> The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

<u>Omega Fin. Servs., Inc. v. Innovia Estates & Mortg. Corp.</u>, No. 07-CV-1470, 2007 WL 4322794, at *1 (D.N.J. Dec. 6, 2007) (citing <u>Jumara</u>, 55 F.3d at 879-80).  The burden falls on the moving defendant to show the desirability of transferring venue and to present evidence[2] upon which the court may rely in justifying transfer.  <u>Fellner ex rel. Estate of Fellner v. Philadelphia Toboggan Coasters, Inc.</u>, No. 05-CV-1052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).  Notably, analyses of transfers under section 1404(a) are "flexible and must be made on the unique facts of each case."  <u>Job Haines Home for the Aged v. Young</u>, 936 F. Supp. 223, 227 (D.N.J. 1996)

---

[2] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties."  <u>Fellner ex rel. Estate of Fellner v. Philadelphia Toboggan Coasters, Inc.</u>, No. 05-CV-1052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).

(internal quotations omitted).

In the case at bar, neither party disputes that the case "might have been brought" in the District of New Jersey.  The Complaint at issue clearly alleges that a substantial part of the events took place in New Jersey, thus satisfying the requirements for venue.  Accordingly, the Court turns to the second part of the inquiry:  whether the convenience of the parties and witnesses, as well as the interests of justice, would be served by transferring this case to the District of New Jersey.  Considering the private and public interests enumerated by the Third Circuit, the Court finds that such a transfer is indeed appropriate.[3]

    **A.**    **Private Interests**

        **1.**    **Plaintiffs' Choice of Venue**

The analysis commences with an examination of Plaintiffs' choice of venue, as manifested by where the suit was originally brought.  A plaintiff's choice of venue is of paramount consideration and "should not be disturbed lightly."  In re Amkor Technology, Inc. v. Securities Litigation, No. 06-CV-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)).  "Moreover, where . . . the plaintiff files suit in its home forum, that choice is entitled to considerable deference."  Am. Argo Corp. v. U.S. Fid. & Guar. Co., 590 F. Supp. 1002, 1004 (E.D. Pa. 1984). Notably, however, a plaintiff's "choice [of forum] receives less weight where none of the operative facts occurred in the selected forum."  Fid. Leasing, Inc. v. Metavec Corp., No. 98-CV-6035, 1999 WL 269933, at *2 (E.D. Pa. Apr. 29, 1999); see also Rowles v. Hammermill Paper

---

      [3]  The Third Circuit has noted that its extensive enumeration of factors to be balanced makes "a written opinion setting forth the reasons for transfer . . . highly desirable."  Jumara, 55 F.3d at 880 (internal quotations omitted).

Co., Inc., 689 F. Supp. 494, 496 (E.D. Pa. 1988) ("plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum." (citations omitted)).

Plaintiffs, in this case, are all residents of Pennsylvania and filed suit in their home forum of Pennsylvania.  As discussed in detail below, however, the operative facts occurred in New Jersey.  Pennsylvania has no other substantive connection to the suit.  Accordingly, while this factor weighs against transfer, it is not entitled to considerable deference.

### 2.   **Defendants' Preference**

The second factor, defendant's forum choice, is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted).  Nevertheless, Defendant ECII's preference for a New Jersey forum weighs in favor of transfer.

### 3.   **Whether the Claim Arose Elsewhere**

Typically the most appropriate venue is governed by the third factor – where a majority of events giving rise to the claim arose. In re Amkor Technology, Inc. Securities Litigation, No. 06-CV-298, 2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006).  "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." Cancer Genetics, Inc. v. Kreatech Biotechnology B.V., No. 07-CV-273, 2007 WL 4365328, at *5 (E.D. Pa. Dec. 11, 2007).  The "operative facts" of a products liability action are deemed to occur where the allegedly defective product was used and injury occurred.  See In re Consol. Parlodel

6

Litig., 22 F. Supp. 2d 320, 326 (D.N.J. 1998) (holding that although allegedly defective drug was designed and manufactured in New Jersey, the cause of action arose in the home district of each plaintiff where the drug was marketed and consumed); Campbell v. FMC Corp., No. 91-CV-7536, 1992 WL 176417, at *2 (E.D. Pa. Jul. 17, 1992) (transferring case to venue where product was used and injury occurred); see also Musser v. Consol. Rail Corp., No. 92-CV-4201, 1992 WL 247296, at *2 (E.D. Pa. Sep. 24, 1992) (transferring action where "the most persuasive factor" was that the accident and injury occurred in transferee district and plaintiff was treated by medical institutions in that district).

Almost all of the operative facts giving rise to this case occurred in New Jersey. The allegedly defective propane cylinder was leased from Defendant Ferrellgas's Woodbridge, New Jersey location, and delivered to the Princeton, New Jersey construction site, approximately one month prior to the accident. (Def. Mem. Supp. Mot. Transfer Ex. D.) Plaintiff used the cylinder while at work in New Jersey and the explosion occurred on the Princeton University campus. (Compl. ¶ 10.) All of the relevant rescue and investigative personnel came from New Jersey and Plaintiffs were initially treated at New Jersey medical centers. (Def. Mem. Supp. Mot. Transfer Ex. C.) Although Plaintiffs aver that "[t]he evidence will show that the ensuing explosion was an accident waiting to happen and only at best peripherally involves the State of New Jersey," (Pl. Mem. Opp. Mot. Transfer 3), they provide no further explanation for this statement or indicate precisely what operative facts occurred in Pennsylvania. Accordingly, this factor weighs in favor of a transfer to the District of New Jersey.

4.   **Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition**

In opposing transfer, Plaintiffs rely heavily on the convenience of the parties.  They contend that because all counsel have their principal offices in Philadelphia and all Plaintiffs reside in Pennsylvania, a transfer to New Jersey would be "extremely inconvenient" and "create a hardship."  (Pl. Mem. Opp. Mot. Transfer Venue 2.)

Plaintiffs' argument is misplaced for several reasons.  First, "the convenience of counsel is not a factor that is relevant in deciding a motion brought under 28 U.S.C. § 1404(a)."  Matt v. Baxter Healthcare Corp., 74 F. Supp.2d 467, 469 (E.D. Pa. 1999) (citing Solomon v. Continental Amer. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973); Jordan v. Delaware & Hudson Ry. Co., 590 F. Supp. 997, 998 (E.D. Pa. 1984)).  Second, given the proximity of the Eastern District of Pennsylvania and the District of New Jersey, Trenton Division (approximately thirty-two miles), factors related to the convenience of the parties do not render one forum significantly more convenient than the other.  Connors, 2004 WL 834726, at *6.  Indeed, as Defendants point out, Plaintiffs Mr. and Mrs. Coppola are approximately five miles closer to the Trenton courthouse than to the Philadelphia courthouse; Plaintiff Stephens is approximately sixteen miles farther from the Trenton courthouse and Plaintiffs Mr. and Mrs. Makowski are approximately twelve and a half miles farther from the Trenton courthouse.[4]  See Holiday v. Bally's Park Place, Inc., No 06-CV-4588, 2007 WL 2600877, at *2 (E.D. Pa. Sep. 10, 2007) (holding that where New Jersey had stronger connection to the accident at the center of a negligence claim, factors of plaintiff's convenience would not preclude transfer from Eastern District of Pennsylvania to

_____

[4]  The Court takes judicial notice of these figures based on estimates provided by http://www.mapquest.com and http://www.maps.yahoo.com.

8

District New Jersey).  Finally, in light of the fact that the three injured Plaintiffs were working at

a construction site in Princeton, only thirteen miles from the Trenton courthouse, the travel time

from their homes to Princeton, New Jersey could not be as onerous or financially burdensome as

they now claim.  Thus, this factor does not weigh heavily in the analysis.

**5.      Convenience of Witnesses**

The next private factor – the convenience of material witnesses – "is a particularly

significant factor in a court's decision whether to transfer."  Idasetima v. Wabash Metal Prods.,

Inc., No. 01-CV-197, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001) (citing Lindley v.

Caterpillar, Inc., 93 F. Supp.2d 615, 617 (E.D. Pa. 2000)).  There are many different types of

witnesses, however, and each one carries a different weight.  "[F]act witnesses who possess first-

hand knowledge of the events giving rise to the lawsuit, have traditionally weighed quite heavily

in the 'balance of convenience' analysis."  Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192,

203 (D. Del. 1998).  Party witnesses or witnesses who are employed by a party, on the other

hand, have little impact on the "balance of convenience" analysis since each party is obligated to

procure the attendance of its own employees for trial.   Id.  Likewise, expert witnesses or

witnesses who are retained by a party to testify carry little weight because they "are usually

selected because of their reputation and special knowledge without regard to their residences and

are presumably well compensated for their attendance, labor and inconvenience, if any."  See

Webster-Chicago Corp. v. Minneapolis-Honeywell Regulator Co., 99 F. Supp. 503, 505 (D. Del.

1951); see also Howell v. Shaw Indus. Nos. 93-CV-2068, 93-CV-2638, 1993 WL 387901, at *5

(E.D. Pa. Oct. 1, 1993) ("[T]he convenience of expert witnesses is generally given little weight in

a motion to transfer venue.").

In the case at bar, this factor does not critically affect the Court's analysis again in light of the close proximity of the two fora and the fact that neither courthouse would pose a substantial hardship in the subpoena of witnesses.  Nonetheless, to the extent we consider witness convenience, it weighs in favor of transfer.  The majority of fact witnesses, which include one of the injured workers, investigators from the Princeton Borough Police Department, representatives of the Princeton Fire Department, representatives of the Princeton First Aid and Rescue Squad, the Mercer County Prosecutor's Office, representatives of the Princeton University Department of Public Safety and personnel at the University Medical Center at Princeton and Capitol Health Systems, all reside in New Jersey.

Plaintiffs respond that they will call as witnesses (a) representatives of their employer; (b) the orthopedic surgeon for Plaintiff Brian Coppola; and (c) professional engineer Gregory Pressman – all of whom reside in Pennsylvania.  Neither the quantity nor the quality of these witnesses, however, tip the scale in Plaintiff's favor.  Plaintiff's employer conducts business in New Jersey, suggesting that the minimal additional travel time is not a hardship.  As to Plaintiffs' doctors, who will presumably testify as to the damages sustained by Plaintiffs, it is well-established that "[t]he liability aspect of a case takes precedence over the damages aspect because without liability evidence, there would be no case."  Howell, 1993 WL 387901, at *5; see also Schmidt v. Leader Dogs for the Blind, Inc., 544 F. Supp. 42, 48 (E.D. Pa. 1982) ("Even where the overwhelming number of plaintiff's possible witnesses include medical professionals who treated plaintiff subsequent to the accident, the case may be transferred because damage testimony would become relevant only if plaintiffs were to succeed on liability." (internal quotations omitted)).  Finally, as noted above, the location of Plaintiff's expert is of minimal

concern.  Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 571 (M.D. Pa. 1999).

In short, considerations of convenience to fact witnesses favor transfer.  Any hardship resulting to the remaining witnesses is marginal and plays little part in the analysis.

### 6.   Location of Books and Records

The final private factor the Court considers is the location of books and records.  As recognized by other decisions, however, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis."  Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (quoting Am. High-Income Trust v. AlliedSignal, Inc., No. 00-CV-690, 2002 WL 373473, at *5 (D. Del. March 7, 2002) (citations omitted)). This factor should thus be limited to the extent that the files could not be produced in the alternative forum.  Jumara, 55 F.3d at 879.

The parties have produced no evidence to suggest that this factor should favor either transfer or denial of transfer.  Accordingly, we grant it no weight.

### B.   Public Interests

### 1.   Enforceability of Judgment

The parties do not dispute that a judgment entered against Defendants in either forum would be enforceable.  Therefore, the Court also assigns no weight to this factor.

### 2.   Practical Considerations that Could Make the Trial Easy, Expeditious or Inexpensive

With respect to the second public interest factor, no discernible practical considerations exist that would make a trial in this matter particularly easy, expeditious or inexpensive.  As noted above, the distance between the Philadelphia and Trenton federal courthouses is a

negligible thirty-two miles.  The convenience of the parties and witnesses and the access to proof

will not be significantly impacted regardless of whether this matter is litigated in Philadelphia or

New Jersey.  Finally, this action has been before the Court for a relatively short period of time

and, thus, "a transfer will not significantly disrupt the litigation or result in a waste of judicial

resources." Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006).

> **3.      The Relative Administrative Difficulty in the Two Fora Resulting
> from Court Congestion**

There is no difficulty in this regard in either the Eastern District of Pennsylvania or the

District of New Jersey which would weigh in favor or against changing venue.

> **4.      The Local Interest in Deciding Controversies at Home**

The Court's next consideration –  which of the two potential districts maintains a greater

interest in the action – bears significantly on our decision.  "The burden of jury duty should not

be placed on citizens with a remote connection to the lawsuit." Nat'l Prop. Investors VIII v.

Shell Oil Co., 917 F. Supp. 324, 330 (D.N.J. 1995).   Typically, when a substantial amount of the

alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as

a matter of local interest. Cancer Genetics, 2007 WL 4365328, at *6; see also In re Eastern Dist.

Repetitive Stress Injury Litig., 850 F. Supp. 188, 195 (E.D.N.Y. 1994) ("When an action

involves injuries sustained in a particular locale, the public interest supports adjudication of the

controversy in that locale where it may be a matter of local attention, rather than in a remote

location where it will be learned of only by report.")

In the case at bar, the District of New Jersey possesses a significantly greater local interest

in this matter than Pennsylvania.  The explosion occurred at Princeton University in New Jersey,

and was responded to and investigated by New Jersey personnel, employed by New Jersey taxpayers.  (Compl. ¶ 10; Def. Mem. Supp. Mot. Transfer Venue Ex. B.)  At least one of the injured workers is a New Jersey resident and all injured Plaintiffs were initially treated at New Jersey medical centers.  Defendant ECII has no facilities, employees or agents in Pennsylvania. (Def. Mem. Supp. Mot. Transfer Venue Ex. C. ¶ 9.)  Defendant Ferrellgas, while maintaining a location in Pennsylvania, leased the allegedly defective cylinder from its New Jersey facility and placed it into the New Jersey stream of commerce by delivering it directly to the Princeton University campus.[5]  (Def. Mot. Transfer Venue Ex. D.)  Although Pennsylvania may harbor a valid interest in protecting its citizens from defective products, the burden of jury duty is more fairly placed on the residents of New Jersey who maintain an interest in resolving disputes which arise from accidents happening within their borders.

### 5.       The Public Policies of the Fora

The next public interest factor inquires into whether the requested transfer promotes the public policy of the forum.  "The policies underlying both Pennsylvania and New Jersey [products liability] law are generally the same:  both states seek to compensate people injured by defective products and regulate the conduct of manufacturers and distributors (i.e., ensure production of safe products) within the state."  Torres v. Lucca's Bakery, 487 F. Supp. 2d 507, 513 (D.N.J. 2007).  New Jersey's public policy concerns, however, exceed these basic principles.

---

[5] Plaintiffs Memorandum in Response states that  the gas cylinder was distributed by Ferrellgas, Inc. and "leased to various construction companies and used at numerous construction sites throughout Pennsylvania."  (Pl. Mem. Opp. Mot. Transfer Venue 1.)  This broad and unsupported statement fails to demonstrate that the cylinder at issue was ever in Pennsylvania, particularly in the face of the contrary evidence presented by Defendant.  (Def. Mem. Supp. Mot. Transfer Venue Ex. D.)

In its Administrative Code, New Jersey maintains an express policy of "provid[ing] minimum standards for liquefied petroleum gas systems for the preservation of health and safety of the general public." N.J. Admin Code § 5:18-1.1, et seq. (2003). The Code goes on to explicitly define standards for the design, construction, location, installation, maintenance and operation of such systems in New Jersey, including required permits and standards for compliance. Id. at 5:18-1.1(a).

The cylinder at issue came from Defendant Ferrellgas's New Jersey location to the New Jersey construction site at the Princeton University campus. Plaintiffs' employer was required to file a Notice of LP-Gas Installation with the New Jersey Department of Community Affairs, as well as an Application for a Fire Safety Permit with the Borough of Princeton Bureau of Fire Prevention. (Def. Mem. Supp. Mot. Transfer Venue Ex. E.) The litigation of this case will likely invoke the liquefied petroleum gas regulations, which, in turn, will impact New Jersey policy. As New Jersey maintains a public interest in ensuring the safe use of such systems and guarding against defective products within its borders, such a factor clearly weighs in favor of transfer.

**6.    The Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases**

Finally, "[j]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." Am. Senso RX, Inc. v. Banner Pharmcaps, Inc., No. 06-CV-1929, 2006 WL 2583450, at *6 (D.N.J. Sep. 6, 2006) (quotations omitted). In a diversity action, a federal court must apply the choice of law rules of the state in which it sits. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497, 61 S. Ct. 1020, 1021-22 (1941). When, however, a case is transferred for the convenience of the parties, pursuant to 28 U.S.C. § 1404(a),

the transferee court must apply the law, including the choice of law rules, that the transferor court would have applied.  Van Dusen v. Barrack, 376 U.S. 612, 635-37, 84 S. Ct. 805, 818-19 (1964).

Pennsylvania's choice of law approach adopts a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp.2d 589, 594 (E.D. Pa. 1999) (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)).  It entails three steps.  First, the court must determine whether a real conflict exists, that is, whether these states would actually treat this issue any differently.  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007); Prell v. Columbia Sussex Corp., No. 07-CV-2189, 2007 WL 3119852, at *3 (E.D. Pa. Oct. 22, 2007).  If there is no substantive difference between the laws of the competing states, no real conflict exists and forum law applies.  Hammersmith, 480 F.3d at 230; Air Prods. and Chems. v. Eaton Metal Prods. Co., 272 F. Supp.2d 482, 490 n. 9 (E.D. Pa. 2003).  Where a real conflict exists, the court moves to the second step and examines the governmental policies underlying each law in order to classify the conflict as true, false or an unprovided for situation.  Hammersmith, 480 F.3d at 230.  A false conflict occurs where only one state's interests would be impaired and the law of the interested state applies.  LeJeune v. Bliss-Salem Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).  Where, on the other hand, each jurisdiction has a governmental policy or interest that would be impaired by the application of the other state's law, a true conflict exists.  Id.  In the case of a true conflict, the court turns to the third step to "determine which state has the greater interest in the application of its law." Hammersmith, 480 F.3d at 231.  This determination demands that a court weigh the contacts each jurisdiction has with the dispute on a qualitative scale according to the extent they implicate the policies and interests underlying the particular dispute before the court.

15

Id.

A real conflict clearly exists between the product liability laws of New Jersey and Pennsylvania.  Pennsylvania law allows negligence and breach of warranty claims to be brought in conjunction with a products liability claim.  Torres, 487 F. Supp.2d at 513.  On the other hand, New Jersey's Products Liability Act, N.J. Stat. Ann. 2A:58C-1, subsumes common law products liability claims into one statutory cause of action for strict liability and does not permit negligence and breach of warranty as separate claims for injuries caused by the defective products.  Torres, 487 F. Supp.2d at 513.  In addition, New Jersey applies a reasonableness standard to the manufacturer's design in strict liability cases and insulates a non-manufacturing seller from liability, where Pennsylvania does not.  Williams v. Terex-Telelect, Inc., No. 01-CV-3770, 2003 WL 22431920, at *2 (E.D. Pa. May 19, 2003).  "When dealing with liability based on negligence, strict liability, products liability or the like, differing rules as to liability or damages generally represent genuine conflicts since the laws covering these issues take into account both the needs of the injured plaintiffs and the economic viability of the defendants."  Id. (quoting Boyes v. Greenwich Boat Works, Inc., 27 F. Supp. 2d 543, 548 (D.N.J. 1998).

Turning to the second step, the Court also finds that a true conflict exists.  As noted above, both Pennsylvania and New Jersey seek to compensate people injured by defective products and regulate the conduct of manufacturers and distributors (i.e., ensure production of safe products) within the state.  Torres, 487 F. Supp. 2d at 513.  Each of their respective interests would be impaired by the application of the other state's law.

This determination leads to the third step.  Without question, New Jersey's quality of contacts to this dispute are substantially stronger than those of Pennsylvania.  Neither party

16

claims that the allegedly defective product was manufactured in either Pennsylvania or New Jersey.  The cylinder was, however, leased in, delivered to and used in New Jersey.  The accident occurred in New Jersey and New Jersey spent a significant amount of time and money responding to and investigating the accident.  Other than the Plaintiffs' residence, Pennsylvania maintains no nexus to this matter.  Accordingly, New Jersey law applies.

Federal judges are frequently called upon to apply the laws of other states and basic products liability principles are not so complicated as to advocate heavily in favor of transfer. See 15 Wright, Miller, & Copper, Federal Practice and Procedure § 3854, at 266-267 (2d ed.1986) (familiarity with state law not given great weight, particularly when the applicable state law appears clear).  A federal judge sitting in New Jersey, however, more often has occasion to apply New Jersey statutory law, than one sitting in Pennsylvania.   More importantly, as discussed above, the applicable New Jersey standards in this case involve technical regulations, set forth in the New Jersey Administrative Code, regarding the installation of a propane gas system.  In that respect, this Court recognizes that these specific standards would be best dealt with by a judge sitting in state that issued them.  See Headon v. Colorado Boys Ranch, No. 04-CV-4847, 2005 WL 1126962, at *8 (E.D. Pa. May 5, 2005) ("[T]his Court acknowledges that a federal district judge in Colorado would be more familiar with Colorado substantive law than this Court, particularly with respect to alleged violations of Colorado state and county rules concerning licensing, approval, certification, safety, operation, maintenance and inspection of residential treatment centers."); Connors v. R&S Parts & Servs., 248 F. Supp. 2d 394, 396 (E.D. Pa. 2003) (transferring case from Pennsylvania to New Jersey due, in part, to the fact that liability would be based on an application of the New Jersey Motor Vehicle Code and a New Jersey

District Judge would be more familiar with the applicable state law).

**III.    CONCLUSION**

Balancing these aggregate factors, this Court finds that New Jersey is the most appropriate venue for resolution of this matter.  Although the Court acknowledges the deference owed to Plaintiffs' choice of venue, that choice is outweighed by the various private and public interests.  In light of these findings, Defendant ECII's Motion to Transfer pursuant to 28 U.S.C. §1404(a) is granted and the matter is transferred to the District of New Jersey for further proceedings.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BRIAN COPPOLA, KIMBERLY COPPOLA,   :
WILLIAM S. STEPHENS, MARTIN   :     CIVIL ACTION
MAKOWSKI, and STEPHANIE MAKOWSKI,   :
                                        :
           Plaintiffs,   :
                                          :
    v.   :
                                          :   NO.  07-4023
FERRELLGAS, INC. and   :
RegO PRODUCTS CORP.,   :
                                          :
          Defendants.   :

<u>**ORDER**</u>

AND NOW, this *6ᵗʰ* day of *March*, 2008, upon consideration of the Motion of Defendant

Engineered Controls International, Inc. (incorrectly identified as "RegO Products Corp." in

Plaintiffs' Complaint) [hereinafter "ECII"] to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

(Doc. No. 21), the Response of Plaintiffs Brian Coppola, Kimberly Coppola, William S.

Stephens, Martin Makowski and Stephanie Makowski (Doc. No. 22), and Defendant ECII's

Reply (Doc No. 25), it is hereby **ORDERED** that the Motion is **GRANTED** and that this case

shall be **TRANSFERRED** to the United States District Court for the District of New Jersey,

Trenton Division.

                                        BY THE COURT:

                                         *s/ Ronald L. Buckwalter*
                                        RONALD L. BUCKWALTER,     S.J.